**KUZYK LAW, LLP**
Michael D. Braun (SBN 167416)
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067
Telephone:  (213) 401-4100
Facsimile:   (213) 401-0311
Email:  mdb@kuzykclassactions.com

**LAW OFFICES OF PETER N. WASYLYK**
Peter N. Wasylyk (pro hac vice pending)
1307 Chalkstone Avenue
Providence, RI 02908
Telephone:  (401) 831-7730
Facsimile:   (401) 861-6064
Email: pnwlaw@aol.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# OAKLAND DIVISION

| | |
|---|---|
| **JAMIE COX and MARY JOHNSON on behalf of themselves and all others similarly situated,** <br><br> **Plaintiffs,** <br><br> v. <br><br> **DEL MONTE FOODS, INC.** <br><br> **Defendant** | **CASE NO.:** <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

Plaintiffs Jamie Cox and Mary Johnson ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Del Monte Foods, Inc. ("Del Monte" or "Defendant"), and on the basis of personal knowledge, information and belief, and the investigation of counsel, allege as follows:

**INTRODUCTION**

1.      This is a proposed class action on behalf of a nationwide, California and New York class (collectively, "Class") of consumers seeking redress for Defendant's deceptive practices associated with the advertising, labeling, and sale of its Deluxe Gold Pineapple products ("Products").

2.      The principal display states the Product's content consists of slices, chunks or tidbits in 100% pineapple juice.



1   3.   The side panel assures consumers that this is Del Monte's "highest
2   quality variety of pineapple" which is non GMO, non BPA, devoid of added sugars
3   and **GUARANTEED** to contain **NO PRESERVATIVES**.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1    4.    Contrary to the representation on the Product's label – guaranteeing that

2    it contains "No Preservatives," the ingredient deck reveals the inclusion of citric acid

3    which, as more fully detailed below, is and acts as a chemical preservative in the

4    Product rendering the representation false, misleading, and in violation of the law.



5    5.    Defendant knows that consumers are willing to pay more for products

6    that are free of preservatives because they perceive them to be a healthier alternative

7    to similar products that contain chemical preservatives. Indeed, Defendant advertises

8    the Product with the clear intention that consumers rely on the representation made on

9    the packaging that the Products are "Guaranteed" to contain "No Preservatives."

10    6.    Reasonable consumers such as the Plaintiffs do not have specialized

11    knowledge necessary to identify ingredients in the Products as being inconsistent with

12    Defendant's advertised claim of "No Preservatives."

13    7.    By falsely labeling its Products as containing "No Preservatives,"

14    Defendant has profited from consumers' preference for clean label products.

15    8.    Throughout the applicable class periods, Defendant has falsely

16    represented the true nature of its Products, and as a result of this false and misleading

17    labeling, was able to sell these Products to hundreds of thousands of unsuspecting

18    consumers throughout California, New York and the United States.

9.     Plaintiffs allege that Defendant's conduct is in breach of warranty, violates California's Business and Professions Code § 17200, et. seq., California's Business & Professions Code § l7500, et. seq., California Civil Code § 1750, et seq., New York General Business Laws §§349-350,and is otherwise grounds for restitution on the basis of quasi-contract/unjust enrichment.

## JURISDICTION AND VENUE

10.     Jurisdiction of this Court is proper under 28 U.S.C. § 1332(d)(2). Diversity jurisdiction exists as Plaintiff Cox is a resident of Rio Vista, California, Plaintiff Johnson is a resident of Bayside, New York and Defendant Del Monte  is Delaware corporation with its principal place of business in Walnut Creek, California. The amount in controversy exceeds $5,000,000 for the Plaintiffs and members of the Class collectively, exclusive of interest and costs, by virtue of the combined purchase prices paid by Plaintiffs and members of the putative Class, and the profits reaped by Defendant from its transactions with Plaintiffs and the Class, as a direct and proximate result of the wrongful conduct alleged herein, and by virtue of the injunctive and equitable relief sought.

11.     Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391 because a substantial portion of the underlying transactions and events complained of occurred and affected persons and entities located in this judicial district. Defendant is headquartered in this district and Defendant has received substantial compensation for affected transactions and business activity in this judicial district.

## PARTIES

12.     Plaintiff Jamie Cox is a resident of Rio Vista, California.

13.     Ms. Cox purchased Defendant's Deluxe Gold Pineapple Rings and Chunks approximately 3 times a year for at least the past 4 years from stores such as Safeway and Walmart located near her residence.

14.　　Ms. Cox made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product contains "No Preservatives."

15.　　Ms. Cox believed the representations on the Product's label that, among other things, it contained "No Preservatives."

16.　　Ms. Cox believed that Defendant lawfully marketed and sold the Product.

17.　　Ms. Cox relied on Defendant's labeling and was misled thereby.

18.　　Ms. Cox would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

19.　　Ms. Cox was injured in fact and lost money as a result of Defendant's improper conduct.

20.　　Plaintiff Mary Johnson is a resident of Bayside, New York.

21.　　Ms. Johnson regularly purchased Defendant's Deluxe Gold Pineapple slices, chunks and tidbits during the past 4 years from stores such as Walmart, Target and others located near her residence.

22.　　Ms. Johnson made each of her purchases after reading and relying on Defendant's Product label, specifically the representation that the Product contains "No Preservatives.

23.　　Ms. Johnson believed the representations on the Product's label that, among other things, it contained "No Preservatives."

24.　　Ms. Johnson believed that Defendant lawfully marketed and sold the Product.

25.　　Ms. Johnson relied on Defendant's labeling and was misled thereby.

26.     Ms. Johnson would not have purchased the Product, or would have purchased the Product on different terms, had she known the truth.

27.     Ms. Johnson was injured in fact and lost money as a result of Defendant's improper conduct.

28.     Plaintiffs and members of the Class have been economically damaged by their purchases of the Products because the advertising for the Products was deceptive and/or misleading under California and New York laws and the Products are misbranded; therefore, the Products are worth less than what Plaintiff and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

29.     Defendant Del Monte Foods, Inc. is incorporated in Delaware and headquartered in Walnut Creek, California. Del Monte Foods is one of the largest producers, distributors and marketers of branded processed food for the U.S. retail market, generating approximately $1.73 billion of annual sales. It sells its products, including the Product at issue in this litigation, in a variety of retail stores across the United States.

## **GENERAL ALLEGATIONS**

### **A.     Citric Acid is a Preservative**

30.     The federal Food Drug & Cosmetic Act  ("FDCA") defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties." 21 C.F.R. §101.22(a)(5). "A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a

mold inhibitor," "to help protect flavor," or "to promote color retention." 21 C.F.R. §101.22(j).

31.     Chemical preservation is the process of adding ingredients to a food for the purpose of preventing potential damage from oxidation, rancidity, microbial growth, or other undesirable changes. Chemical preservatives may be both natural or synthetic and function one of several ways — (a) as an antimicrobial agent to destroy bacteria or inhibit the growth of mold on foods; (b) as an antioxidant to inhibit oxidation and resulting rancidity; and (3) as a chelating agent which binds metal ions in certain foods to prevent oxidation.

32.     Citric acid is a preservative within the meaning of 21 C.F.R. §101.22. Indeed, in a consumer facing publication, *Food Ingredients and Colors*, the Food and Drug Administration ("FDA") unequivocally identifies "citric acid" as a preservative.[1]

| Types of Ingredients | What they Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| Preservatives | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, |

---

[1] *Food Ingredients and Colors*, International Food Information Council Foundation and U.S. Food and Drug Administration, specifically identifies the following as preservatives: ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E). Available at https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited July 10, 2024).

|  |  |
|---|---|
| (antioxidants); maintain freshness | BHA, BHT, EDTA, tocopherols (Vitamin E) |

33.     The sentiment is echoed in the Substances Added to Food database maintained by the FDA, in which the principal technical effects of citric acid are identified as preservative functions. [2] Finally, in a Warning Letter issued to Chiquita Brands International, Inc. and Fresh Express, Incorporated, October 6, 2010, the FDA made clear that citric acid was a preservative and needed to be identified as such. "The "Pineapple Bites" and "Pineapple Bites with Coconut" products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR §101.22."[3]

34.     Citric acid's primary use is as a preservative, despite potentially having additional functions.[4]  It functions as a preservative in the Product, regardless of Defendants' subjective purpose(s) for adding it to the Product, and regardless of any other functions citric acid may perform. This is even more the case here where Defendant has not declared a contrary purpose for adding citric acid.

**B.     Citric Acid Operates as a Preservative in Defendant's Products**

---

[2] The Substances Added to Food Database formerly Everything Added to Foods in the United States, available at https://www.cfsanappsexternal.fda.gov/scripts/fdcc/?set=FoodSubstances&sort=Sortterm_ID&order=ASC&startrow=1&type=basic&search=citric%20acid (last visited July 10, 2024)

[3] http://fda-warning-letters.blogspot.com/2010/10/fresh-express-incorporated-10610.html (last visited July 10, 2024).

[4] *See* https://fbcindustries.com/citric-acid-one-of-the-most-important-preservatives-in-the-world/ (last visited July 10, 2024).

35. Preservatives slow product spoilage caused by mold, air, bacteria, fungi or yeast (antimicrobials) and slow or prevent changes in flavor and delay rancidity (antioxidants). Citric acid acts as a preservative by increasing the acidity of a microbe's environment, making it harder for bacteria and mold to survive and reproduce.

36. The FDA broadly defines a food additive as any substance added to food. More specifically, the term refers to "any substance the intended use of which results or may reasonably be expected to result — directly or indirectly — in its becoming a component or otherwise affecting the characteristics of any food."[5]  This definition includes any substance used in the production, processing, treatment, packaging, transportation or storage of food. The citric acid identified in the ingredient list of Defendant's Product is not naturally occurring, but rather a chemical preservative specifically added as part of the Product's formulation.

37. Moreover, citric acid is effective as, and functions as, a preservative in Defendant's Product even when used in relatively low quantities. Thus, even if citric acid is present in the Product at low quantities, Defendant's "No Preservatives" representation is false, deceptive, and misleading for two independent reasons: (1) it contains added citric acid, which is undeniably a chemical preservative; and (2) it contains citric acid in quantities that are sufficient for it to have a tendency to preserve and otherwise function as a preservative in the Product.[6]

---

[5] *Understanding How the FDA Regulates Food Additives and GRAS Ingredients,* Current as of 07/06/23. Available at https://www.fda.gov/food/food-additives-and-gras-ingredients-information-consumers/understanding-how-fda-regulates-food-additives-and-gras-ingredients#:~:text=A%20food%20additive%20is%20defined,the%20characteristics%20of%20any%20food (last visited March 12, 2024).

[6] *Olmos v. T. Marzetti Co.*, 2022 U.S. Dist. LEXIS 236205 *29 (finding Defendant's argument unpersuasive with respect to  Plaintiffs' claims that citric acid always functions as a preservative even if it is at a very low level in the products).

38.     Plaintiffs conducted an independent chemical analysis of Del Monte's Product to determine the amount of citric acid, as well as the Product's acidity reflected in terms of pH. The analysis unequivocally demonstrates that Del Monte's Product employs a preservation system in which the additional citric acid functions as a preservative.

39.     For a product to be shelf-stable it typically must have a pH value of 4.6 or below. This pH level inhibits the growth of harmful microorganisms, including Clostridium botulinum, which can cause botulism, a serious foodborne illness. The FDA's regulations for acidified foods and low-acid canned foods specify that maintaining a pH at or below this threshold is critical for ensuring the microbial safety of the product during storage and distribution without refrigeration. 21 C.F.R. §110.80 (b)(15).

40.     Plaintiffs' testing reveals that Del Monte's Product has a citric acid content of 434 mg/114 g and a pH value of 3.62. By comparison, it takes only 5 mg of citric acid introduced into 1000 g of water to reduce the solution pH from 7.0 to 4.6.[7] The amount of citric acid present in Del Monte's Product is 86x larger (434 mg) in a solution that is 7x smaller (141 g) in comparison to this standard.

41.     Accordingly, the concentration of citric acid in the Product is sufficient to lower the pH of the product to the measured value of 3.62 or below, which preserves the Product in a shelf stable, non-refrigerated state. As such, the citric acid in the Product is acting as a preservative.

---

[7] Chemistry 2e, OpenStax, 2019, Ch. 14 Acid-Base Equilibria, p. 711, example 14.12 (Calculating Equilibrium Concentrations in a Weak Acid Solution). Available at https://openstax.org/details/books/chemistry-2e (last visited July 10, 2024).

## C. Consumer Demand For Clean Label Products

42. The clean label movement has been called "the largest shift in American food habits since World War II."[8] The term encompasses many things but is most often associated with foods that are natural, healthy, and devoid of additives and preservatives.[9]

43. By representing the Product has "No Preservatives," Defendant seeks to capitalize on consumer preference for clean label products. Indeed, "foods bearing 'free-from' claims are increasingly relevant to Americans, as they perceive the products as closely tied to health."[10] "84 percent of Americans buy "free-from" foods because they believe them to be more natural or less processed." Among such consumers, the claim 'no preservatives' ranks "[a]mong the top claims… deem[ed] most important." *Id.*

44. In a survey undertaken by L.E.K, around 1600 consumers were asked which claims were the most important to them when buying food and drink products. Results indicated the most popular claim to be "no artificial ingredients" followed closely by a claim that a product contained "no preservatives.[11]

---

[8] *Clean Labels, Public Relations or Public Health*, Center For Science in the Public Interest (2017), available https://www.cspinet.org/sites/default/files/2022-03/Clean%20Label%20report.pdf (last visited July 10, 2024).

[9] *Clean label trend is evolving - consumers still willing to pay a price premium*, Valio, May 29, 2023. Available at https://www.valio.com/food-solutions-for-companies/articles/clean-label-trend-is-evolving-and-consumers-willing-to-pay-a-price-premium/ (last visited July 10, 2024).

[10] *See, Free-from Food Trends US 2015 Report,* MINTEL, Available at https://www.mintel.com/press-%20centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed (last visited July 10, 2024).

[11] L.E.K. Consulting, *How the Clean-Label Megatrend Is Changing the Food Ingredients Landscape*, Vol XXI, Issue 74, November 18, 2019. Available at https://www.lek.com/insights/ei/clean-label-food-ingredients (last visited July 10, 2024).

Figure 2
Percentage of US consumers purchasing 'frequently or always' based on food claim (2018)

Note: Question: How frequently has your household purchased food with the following attributes or claims over the past 12 months when they were available?
Source: L.E.K. Consumer Survey and analysis

45.   By failing to properly label its Product, Defendant has misled and deceived consumers in violation of the laws pled herein.

46.   As a result of Defendant's unlawful and deceptive conduct, Plaintiffs and members of the Class have been harmed.

## ECONOMIC INJURY

47.   Plaintiffs sought to buy Products that were lawfully labeled, marketed, and sold.

48.   Plaintiffs saw and relied on Defendant's misleading labeling of its Products.

49.   Del Monte guaranteed, and Plaintiffs believed that the purchased Products contained "no preservatives."

50.   Plaintiffs believed that the Products were lawfully marketed and sold.

51.   In reliance on the claims made by Defendant regarding the qualities of their Products, Plaintiffs paid a price premium.

52.   As a result of their reliance on Defendant's misrepresentations, Plaintiffs received Products that contained ingredients which they reasonably believed they did not contain.

53.   Plaintiffs received Products that were unlawfully marketed and sold.

54.   Plaintiffs lost money and thereby suffered injury as they would not have purchased these Products and/or paid as much for them absent the misrepresentation.

55.   Defendant knows that the claim "No Preservatives" is material to a consumer's purchasing decision.

56.   Plaintiffs altered their positions to their detriment and suffered damages in an amount equal to the amounts they paid for the Products they purchased, and/or in additional amounts attributable to the deception.

57.   By engaging in the false and deceptive conduct alleged herein, Defendant reaped, and continues to reap financial benefits in the form of sales and profits from its Products.

58.   Plaintiffs, however, would be willing to purchase products labeled as "No Preservatives" again in the future, including Defendant's Product, should they be able to rely with any confidence on Defendant's marketing as truthful and not deceptive.

59.   However, Plaintiffs will not be able to purchase Defendant's Product in the future, even though Plaintiffs would like to, since simply viewing the ingredient list on Defendant's Product that displays the wording "No Preservatives" on the label may not be enough to prevent Plaintiffs from being deceived by Defendant's Product since it will not afford Plaintiff the opportunity to quickly and easily view the ingredient list before purchasing the Product to determine whether any of the ingredients in the Product are preservatives, especially because Plaintiffs, as reasonable consumers, do not have the scientific or encyclopedic knowledge to view

all the ingredients identified on the ingredient list to determine whether a particular ingredient is a preservative. Moreover, Plaintiffs do not have access to Defendant's ingredient formulations to properly identify whether a particular ingredient is a preservative much less that if it tends to preserve and/or has a preservative effect.

## **CLASS ACTION ALLEGATIONS**

60.    Plaintiffs bring this action on behalf of themselves and on behalf of classes of all others similarly situated consumers defined as follows:

> a. **California:** All persons in California who purchased the Class Products in California during the Class Period; [12]
>
> b. **New York:** All persons in New York who purchased the Class Products in New York during the Class Period;
>
> c. **Class Period** is the maximum time allowable as determined by the statute of limitation periods accompanying each cause of action.

61.    Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(a), and 23(b)(1), 23(b)(2), 23(b)(3) and 23(c)(4).

62.    Excluded from the Classes are: (i) Defendant and its employees, principals, affiliated entities, legal representatives, successors and assigns; and (ii) the judges to whom this action is assigned.

63.    Upon information and belief, there are tens of thousands of members of the Class. Therefore, individual joinder of all members of the Class would be impracticable.

64.    There is a well-defined community of interest in the questions of law and fact affecting the parties represented in this action.

---

[12] Collectively referred to as "Class or Classes."

65. Common questions of law or fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal or factual questions include but are not limited to:

a. Whether Defendant marketed, packaged, or sold the Class Products to Plaintiffs and those similarly situated using false, misleading, or deceptive statements or representations;

b. Whether Defendant omitted or misrepresented material facts in connection with the sales of their Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein;

d. Whether Defendant has been unjustly enriched as a result of their unlawful business practices;

e. Whether Defendant's actions violate the Unfair Competition Law, Cal. Bus. & Prof. Code §§17200, et seq. (the "UCL");

f. Whether Defendant's actions violate the False Advertising Law, Cal. Bus. & Prof. Code §§17500, et seq. (the "FAL");

g. Whether Defendant's actions violate the Consumers Legal Remedies Act, Cal. Civ. Code §§1750, et seq. (the "CLRA");

h. Whether Defendant's actions violate N.Y. Gen. Bus. Law § 349 et seq;

i. Whether Defendant's actions violate N.Y. Gen. Bus. Law § 350 et seq;

j. Whether Defendant's actions constitute breach of express warranty;

k. Whether Defendant should be enjoined from continuing the above-described practices;

l. Whether Plaintiff and members of the Class are entitled to declaratory relief; and

m. Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

66.     Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs are consumers who purchased Defendant's Product. Plaintiffs are no different in any relevant respect from any other Class member who purchased the Product, and the relief sought is common to the Class.

67.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent, and they have retained counsel competent and experienced in conducting complex class action litigation. Plaintiffs and their counsel will adequately protect the interests of the Class.

68.     A class action is superior to other available means for the fair and efficient adjudication of this dispute. The damages suffered by each individual Class member will likely be relatively small, especially given the cost of the Products at issue and the burden and expense of individual prosecution of complex litigation necessitated by Defendant's conduct. Thus, it would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Moreover, even if members of the Class could afford individual actions, it would still not be preferable to class-wide litigation. Individualized actions present the potential for inconsistent or contradictory judgments. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

69.     In the alternative, the Class may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and final equitable relief with respect to each Class.

70.     The requirements for maintaining a class action pursuant to Rule 23(b)(2) are also met, as Defendant has acted or refused to act on grounds generally applicable

to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.


## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
**Violation of Breach of Express Warranty**

71.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

72.     Plaintiffs' express warranty claims are based on violations of N.Y. CLS UCC § 2-313 and § 2-607 and Cal. Com. Code §2313. Defendant was afforded reasonable notice of this claim in advance of the filing of this complaint.

73.     Defendant made express warranties to Plaintiffs and members of the Class that the Products they purchased contained no preservatives.

74.     The express warranties made to Plaintiffs and members of the Class appear on every Product label. This warranty regarding the nature of the Product marketed by Defendant specifically relates to the goods being purchased and became the basis of the bargain.

75.     Plaintiffs and Class members purchased the Products in the belief that they conformed to the express warranties that were made on the Products' labels.

76.     Defendant breached the express warranties made to Plaintiffs and members of the Class by failing to supply goods that conformed to the warranties it made. As a result, Plaintiffs and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

77.     Plaintiffs and the members of the Class paid money for the Products. However, Plaintiffs and the members of the Class did not obtain the full value of the advertised Products. If Plaintiffs and other members of the Class had known of the true nature of the Products, they would not have purchased them or paid less for them. Accordingly, Plaintiff sand members of the Class have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

78.     Plaintiffs and Class members are therefore entitled to recover damages, punitive damages, equitable relief such as restitution and disgorgement of profits, and declaratory and injunctive relief.

## SECOND CAUSE OF ACTION
**Unlawful Business Practices**
**Violation of The Unfair Competition Law ("UCL")**
**Bus. & Prof. Code §§17200, *et seq*.**

79.     Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

80.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

81.     A business act or practice is "unlawful" if it violates any established state or federal law.

82.     Defendant's acts, omissions, misrepresentations, practices, and/or non-disclosures concerning the Products alleged herein, constitute "unlawful" business acts and practices in that they violate the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§301, et seq. and its implementing regulations, including, at least, the following sections:

a. 21 U.S.C. §343(a), which deems food misbranded when its labeling contains a statement that is false or misleading in any particular;

b. 21 C.F.R. §102.5(a)-(d), which prohibits the naming of foods so as to create an erroneous impression about the presence or absence of ingredient(s) or component(s) therein;

c. 21 U.S.C. §§331and 333, which prohibits the introduction of misbranded foods into interstate commerce.

d. 21 C.F.R. §.” 21 C.F.R. §101.22(j). “A food to which a chemical preservative(s) is added shall…. bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function, e.g., "preservative," "to retard spoilage," "a mold inhibitor," "to help protect flavor," or "to promote color retention."

83.    California has expressly adopted federal labeling requirements as its own pursuant to the Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the “Sherman Law”), the Sherman Law, which provides that “[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state.” Cal. Health & Safety Code § 110100.

84.    Each of Defendant’s violations of federal law and regulations violates California’s Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875 et seq. (the “Sherman Law”), including, but not limited to, the following sections:

85.    Section 110100 (adopting all FDA regulations as state regulations);

86.    Section 110290 (“In determining whether the labeling or advertisement of a food . . . is misleading, all representations made or suggested by statement, word, design, device, sound, or any combination of these, shall be taken into account.”);

87.     Section 110390 ("It is unlawful for any person to disseminate any false advertisement of any food. . . .  An advertisement is false if it is false or misleading in any particular.");

88.     Section 110395 ("It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food . . . that is falsely advertised.");

89.     Section 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.");

90.     Section 110400 ("It is unlawful for any person to receive in commerce any food . . . that is falsely advertised or to deliver or proffer for delivery any such food . . . ."); and

91.     Section 110660 ("Any food is misbranded if its labeling is false or misleading in any particular.").

92.     Each of the challenged omissions, statements, and actions by Defendant violates the FDCA, and the Sherman Law, and, consequently, violates the "unlawful" prong of the UCL.

93.     Defendant's conduct is further "unlawful" because it violates California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 et seq. (the "FAL"), California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), and breaches express warranty, as discussed in the claims above and below.

94.     By committing the unlawful acts and practices alleged above, Defendant has engaged, and continues to be engaged, in unlawful business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

95.     Through their unlawful acts and practices, Defendant has obtained, and continues to unfairly obtain, money from members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all

members of the Class, to disgorge the profits Defendants made on these transactions, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an order is not granted.

### THIRD CAUSE OF ACTION
**Unfair Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200, *et seq*.**

96.    Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

97.    The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code §17200.

98.    A business act or practice is "unfair" under the Unfair Competition Law if the reasons, justifications and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

99.    Defendant has violated, and continues to violate, the "unfair" prong of the UCL through its misleading description of the Products. The gravity of the harm to members of the Class resulting from such unfair acts and practices outweighs any conceivable reasons, justifications, or motives of Defendant for engaging in such deceptive acts and practices. By committing the acts and practices alleged above, Defendant engaged, and continued to engage, in unfair business practices within the meaning of California Business and Professions Code §§17200, *et seq.*

100.   Through its unfair acts and practices, Defendant obtained, and continue to unfairly obtain, money from members of the Class. As such, Plaintiffs have been injured and requests that this Court cause Defendants to restore this money to

Plaintiffs and the members of the Class, to disgorge the profits Defendant made on their Products, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

**FOURTH CAUSE OF ACTION**
**Fraudulent Business Practices**
**Violation of The Unfair Competition Law**
**Bus. & Prof. Code §§ 17200,** *et seq.*

101.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

102.   The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code §17200.

103.   A business act or practice is "fraudulent" under the Unfair Competition Law if it actually deceives or is likely to deceive members of the consuming public.

104.   Defendant's acts and practices of mislabeling its Products in a manner to suggest they contain no preservatives.

105.   As a result of the conduct described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by the profits it has obtained from Plaintiff and the Class from the purchases of its Products.

106.   Through their fraudulent acts and practices, Defendant has improperly obtained, and continues to improperly obtain, money from members of the Class. As such, Plaintiffs request that this Court cause Defendant to restore this money to

Plaintiffs and the Class, to disgorge the profits Defendant has made, and to enjoin Defendants from continuing to violate the Unfair Competition Law or violating it in the same fashion in the future. Otherwise, the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

### FIFTH CAUSE OF ACTION
**False Advertising**
**Violation of California Business & Professions Code §§ l7500, *et seq*.**

107.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

108.   Defendant uses advertising and packaging to sell its Products. Defendant disseminates advertising regarding its Products which by their very nature are deceptive, untrue, or misleading within the meaning of California Business & Professions Code §§17500, *et seq.* because those advertising statements contained on the labels are misleading and likely to deceive, and continue to deceive, members of the putative Class and the general public.

109.   In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of California Business & Professions Code §§17500, *et seq*.

110.   The misrepresentations and non-disclosures by Defendant of the material facts detailed above constitute false and misleading advertising and therefore constitute a violation of California Business & Professions Code §§17500, *et seq*.

111.   Through their deceptive acts and practices, Defendant has improperly and illegally obtained money from Plaintiff and the members of the Class. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and the members of the Class, and to enjoin Defendant from continuing to violate

California Business & Professions Code §§17500, *et seq.*, as discussed above. Otherwise, Plaintiff and those similarly situated will continue to be harmed by Defendant's false and/or misleading advertising.

112.   Pursuant to California Business & Professions Code §17535, Plaintiff seeks an Order of this Court ordering Defendant to fully disclose the true nature of its misrepresentations. Plaintiff additionally requests an Order: (1) requiring Defendant to disgorge its ill-gotten gains, (2) award full restitution of all monies wrongfully acquired by Defendant, and (3) interest and attorneys' fees. Plaintiff and the Class may be irreparably harmed and denied an effective and complete remedy if such an Order is not granted.

## SIXTH CAUSE OF ACTION
### Violation of the Consumers Legal Remedies Act
### California Civil Code §§ 1750, *et seq.*
### (On behalf of the California Class)

113.   Plaintiffs incorporate each and every allegation contained in the paragraphs above as if restated herein.

114.   This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§1750, *et seq*. (the "CLRA").

115.   Plaintiffs and each member of the proposed Class are "consumers" within the meaning of Civil Code §1761(d).

116.   The purchases of the Products by consumers constitute "transactions" within the meaning of Civil Code §1761(e) and the Products constitute "goods" within the meaning of Civil Code §1761(a).

117.   Defendant has violated, and continue to violate, the CLRA in at least the following respects:

a. §1770(5) pertaining to misrepresentations regarding the characteristics of goods sold—specifying that misleading representations regarding ingredients violate the CLRA;

b. §1770(7) pertaining to misrepresentations regarding the standard, quality, or grade of goods sold; and

c. § 1770(9) pertaining to goods advertised with the intent not to provide what is advertised.

118.   Defendant knew, or should have known, that the labeling of its Products violated consumer protection laws, and that these statements would be relied upon by Plaintiff and the members of the Class.

119.   The representations were made to Plaintiff and all members of the Class. Plaintiff relied on the accuracy of the representations on Defendant's labels which formed a material basis for his decision to purchase the Products. Moreover, based on the very materiality of Defendant's misrepresentations uniformly made on or omitted from their Product labels, reliance may be presumed or inferred for all members of the Class.

120.   Defendant carried out the scheme set forth in this Complaint willfully, wantonly, and with reckless disregard for the interests of Plaintiffs and the Class, and as a result, Plaintiff and the Class have suffered an ascertainable loss of money or property.

121.   Plaintiffs and the members of the Class request that this Court enjoin Defendant from continuing to engage in the unlawful and deceptive methods, acts and practices alleged above, pursuant to California Civil Code §1780(a)(2). Unless Defendant is permanently enjoined from continuing to engage in such violations of the CLRA, future consumers of Defendant's Products will be damaged by their acts and practices in the same way as have Plaintiffs and the members of the proposed Class.

122.   In conjunction with the Complaint, Plaintiffs served a CLRA demand pursuant to Civil Code §1782, notifying Defendant of the conduct described herein and that such conduct was in violation of particular provisions of Civil Code §1770. If Defendant fails to provide a proper remedy within 30 days of receipt of Plaintiffs' demand, Plaintiffs will seek to add a claim for damages pursuant to Civil Code § 1780(a).

### SEVENTH CAUSE OF ACTION

**(Violation of New York's Consumer Protection from Deceptive Acts and Practices Law N.Y. GEN. BUS. LAW § 349 *et seq.*)**
**(On behalf of the New York Subclass)**

123.   Plaintiff Johnson incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Johnson brings this claim on behalf of the New York Subclass for violation of section 349 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 349 *et seq.*

124.   Section 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 349(a).

125.   Del Monte's labeling and marketing of its Product, as alleged herein, constitute "deceptive" acts and practices, as such conduct misled Plaintiff Johnson and the New York Subclass as to the characteristics and value of the Products.

126.   Subsection (h) of Section 349 grants private plaintiffs a right of action for violation of New York's Consumer Protection from Deceptive Acts and Practices Law, as follows:

> In addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his

> own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Gen. Bus. Law § 349(h).

127.   In accordance with subsection (h) of Section 349, Plaintiff Johnson seeks an order enjoining Del Monte from continuing the unlawful deceptive acts and practices set out above. Absent a Court order enjoining the unlawful deceptive acts and practices, Del Monte will continue its deceptive and misleading marketing campaign and, in doing so, irreparably harm each of the New York Subclass members. As a consequence of Del Monte's deceptive acts and practices, Plaintiff Johnson and other members of the New York Subclass suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Johnson and other members of the New York Subclass also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 349(h).

## EIGTH CAUSE OF ACTION

### (Violation of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. GEN. BUS. LAW § 350 *et seq.*)
### (On Behalf of the New York Subclass)

128.   Plaintiff Johnson incorporates each and every allegation contained in the paragraphs above as if restated herein. Plaintiff Johnson brings this claim on behalf of the New York Subclass for violation of section 350 of New York's Consumer Protection from Deceptive Acts and Practices Law, N.Y. Gen. Bus. Law § 350.

129.   Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in [the State of New York]." N.Y. Gen. Bus. Law § 350.

130.   New York General Business Law Section 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.1. The section also provides that advertising can be false by omission, as it further defines "false advertising" to include "advertising [that] fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates." *Id.*

131.   Del Monte's labeling, marketing, and advertising of its Seltzers, as alleged herein, are "misleading in a material respect" and, thus, constitute "false advertising," as they falsely represent the Products as consisting of characteristics and lawfulness that they do not possess.

132.   Plaintiff Johnson seeks an order enjoining Del Monte from continuing this false advertising. Absent enjoining this false advertising, Del Monte will continue to mislead Plaintiff Johnson and the other members of the New York Subclass as to the characteristics of their Products, and in doing so, irreparably harm each of the New York Subclass members.

133.   As a direct and proximate result of Del Monte's violation of New York General Business Law §350, Plaintiff Johnson and the other members of the New York Subclass have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Johnson and other members of the New York Subclass also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. GEN. BUS. LAW § 350-e.

## NINTH CAUSE OF ACTION
**Restitution Based On Quasi-Contract/Unjust Enrichment**

134. Plaintiffs incorporate each and every allegation contained in the paragraphs above as if rewritten herein.

135. Plaintiffs plead this cause of action in the alternative.

136. Defendant's conduct in enticing Plaintiffs and the Class to purchase its Products with false and misleading packaging is unlawful because the statements contained on the Defendant's Product labels are untrue.

137. Defendant took monies from Plaintiffs and the Class for these Products and have been unjustly enriched at the expense of Plaintiffs and the Class as a result of their unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiffs and the Class. It is against equity and good conscience to permit Defendant to retain the ill-gotten benefits received from Plaintiffs and Class members.

138. As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and the Class are entitled to restitution or restitutionary disgorgement in an amount to be proved at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs, on behalf of themselves and on behalf of the other members of the Class and for the Counts so applicable on behalf of the general public request an award and relief as follows:

A. An order certifying that this action is properly brought and may be maintained as a class action, that Plaintiffs be appointed Class Representatives, and Plaintiffs' counsel be appointed Lead Counsel for the Class.

B.      Restitution in such amount that Plaintiffs and all members of the Class paid to purchase Defendant's Product or restitutionary disgorgement of the profits Defendant obtained from those transactions, for Causes of Action for which they are available.

C.      Compensatory damages for Causes of Action for which they are available.

D.      Statutory penalties for Causes of Action for which they are available.

E.      Punitive Damages for Causes of Action for which they are available.

F.      A declaration and Order enjoining Defendant from marketing and labeling its Products deceptively, in violation of laws and regulations as specified in this Complaint.

G.      An Order awarding Plaintiffs their costs of suit, including reasonable attorneys' fees and pre and post judgment interest.

H.      An Order requiring an accounting for, and imposition of, a constructive trust upon all monies received by Defendant as a result of the unfair, misleading, fraudulent and unlawful conduct alleged herein.

I.      Such other and further relief as may be deemed necessary or appropriate.

1

## **DEMAND FOR JURY TRIAL**

2

3
Plaintiffs hereby demand a trial by jury on all causes of action or issues so triable.

4
DATED: July 11, 2024                          Respectfully submitted,

5

6

7

8
Michael D. Braun

9
**KUZYK LAW, LLP**

10
2121 Avenue of the Stars, Ste. 800
Los Angeles, California 90067

11
Telephone: (213) 401-4100

12
Email: mdb@kuzykclassactions.com

13
Peter N. Wasylyk (pro hac vice pending)

14
**LAW OFFICES OF PETER N. WASYLYK**

15
1307 Chalkstone Avenue

16
Providence, RI 02908
Telephone:  (401) 831-7730

17
Facsimile:   (401) 861-6064

18
Email: pnwlaw@aol.com

19
*Counsel for Plaintiffs*

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES, EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF